SCOTT E. BRADFORD, OSB #062824
United States Attorney
District of Oregon
**LEAH K. BOLSTAD, OSB #052039**
Leah.Bolstad@usdoj.gov
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:25-cr-00060-AB** |
| **v.** | **GOVERNMENT'S SENTENCING MEMORANDUM** |
| **CLAY'VAUGHN LA'DON CRANE-GUZMAN,** | |
| **Defendant.** | |

**Introduction**

Defendant is a repeat and undeterred gun offender. This conviction will be his fourth

felony involving a firearm. He has two prior felony convictions for shooting at other people in

2010 and 2017. He has one prior federal conviction for Felon in Possession of a Firearm in 2013.

He has no business being near firearms. He is a danger to the community. The government

recommends an above-guideline 60-month sentence of imprisonment, a three-year term of

supervised release, and a $100 fee assessment.

///

///

**Government's Sentencing Memorandum**                                                    **Page 1**

I.      **Background**

    A.      **The Offense Conduct**

On February 10, 2025, at approximately 6:30 p.m., Portland Police Bureau (PPB) officers observed defendant illegally crossing the street near NW Fifth and NW Glisan in downtown Portland. When the officers attempted to contact defendant, he fled on foot. As he ran, defendant discarded a tan cross-body bag and a black puffy overcoat. The officers retrieved the items and then caught up to and arrested defendant. Post *Miranda*, defendant denied ownership and possession of the tan cross-body bag.  Inside the bag, investigators found a silver Ruger 22 caliber pistol bearing S/N 471878 with an orange bandana wrapped around the grip.



Orange is the color commonly associated with defendant's gang (PSR ¶ 52), the Hoover Criminals.  The firearm was loaded with 8 rounds in the magazine and one round in the chamber. Later, defendant admitted the gun was his and that he was carrying it "for protection."

**Government's Sentencing Memorandum**                                                    **Page 2**

The Ruger pistol was manufactured outside of Oregon, and it thus moved in interstate commerce to be found in Oregon. Defendant has prior felony convictions for: (i) Attempted Murder and Assault II with a Firearm (Multnomah Co. 2017), (ii) Felon in Possession of a Firearm, (2013, U.S. District Court), and (iii) Unlawful Use of a Weapon with a Firearm (Multnomah Co. 2010), for which he was sentenced to 90 months, 41 months, and 16 months respectively. After having served prison sentences for terms exceeding one year, defendant knew he had been convicted of crimes punishable by imprisonment for more than one year.

## B.      The Charge

On February 20, 2025, the grand jury returned an indictment charging defendant with one count of Felon in Possession of a Firearm, in violation of Title 18, United States Code, Section 922(g)(1).  ECF No. 1.  On December 17, 2025, defendant pleaded guilty to Count 1 of the Indictment (3:25-cr-00060-AB) charging Felon in Possession of a Firearm, a violation of Title 18, United States Code, Section 922(g)(1).

## C.      The Sentencing Guidelines Applied to This Case

The government agrees with the following guidelines which are accurately reflected in the PSR computations:

| Count 1: 18 U.S.C. § 922(g)(1) – Felon in Possession of a Firearm | | |
|---|---|---|
| USSG § 2K2.1(a)(2) | Base Offense Level | 20 |
| USSG §3E1.1(a) and (b) | Acceptance of Responsibility | -3 |
| | **Total Offense Level** | 17 |
| | **Criminal History Category** | V (PSR ¶ 41) |

At TOL 17, CHC V, the advisory guideline range is 46-57 months' imprisonment. However, by plea, the government indicated that regardless of the applicable guideline range, it intended to recommend a sentence in TOL 19 within his CHC.  Plea ¶ 8, fn. 1.  The defendant's prior UUW-Firearm previously counted as a crime of violence in his 2013 federal prosecution.

**Government's Sentencing Memorandum** **Page 3**

Due to changes in the legal landscape, the government acknowledges that this prior UUW-FA may no longer technically qualify as a crime of violence.  In his plea agreement, an explicit term states, "Defendant understands that regardless of his final guideline range as calculated by the Court, the government intends to recommend a sentence within the range set at TOL 19, at his CHC, and the government is doing so because he has two prior felonies that involved shooting at other people, and such conduct is inherently and obviously violent."  PSR ¶ 33.

### D.      Forfeiture

As part of his plea agreement, defendant agreed to forfeit all right, title, and interest in and to all assets which are subject to forfeiture pursuant to 18 U.S.C. § 924(d) and/or 28 U.S.C. § 2461(c) including the firearm involved in the offense and associated ammunition.  At time of sentencing, the Government will present and request the court to enter a Final Order of Forfeiture for this case.

## II.      Government Recommendation

The government recommends a 60-month term of imprisonment, followed by a 3-year term of supervised release, and a $100 fee assessment. Such a sentence is sufficient, but not greater than necessary, to accomplish the goals of sentencing.  A 60-month recommendation is within the range at TOL 19, CHC V (57-71), and is consistent with the plea agreement.

A 60-month sentence is appropriate given this defendant's history of using and possessing firearms illegally. In two prior episodes, he shot at other people. In his prior federal 922(g) prosecution, he received a 41-month sentence in 2013. That did not deter him from continued gun use. Just three years later, he was out of custody, and he shot and injured two people. PSR ¶ 38. Thus, the 41-month sentence did not deter him from engaging in future similar conduct.

**Government's Sentencing Memorandum**                                    **Page 4**

Moreover, despite his claims that he carries firearms "for protection," this 2016 shooting is to the contrary.  Witnesses observed defendant pull into a parking lot, exit his vehicle, walk up to an occupied vehicle, pull out a handgun, and fire multiple rounds at the people in the car.  PSR ¶ 38. There is nothing about this incident that indicates he was using a firearm "for protection." He is a member of a violent gang that encourages and expects members to use firearms to shoot at rivals.  As such, he is now and will continue to be a danger to the community.

Dated: June 17, 2026

Respectfully submitted,

SCOTT E. BRADFORD
United States Attorney

*/s/ Leah K. Bolstad*
LEAH K. BOLSTAD, OSB #052039
Assistant United States Attorney